STATE
*vs.*
MUNSEY

Sagadahoc.    Opinion, November 3, 1956.

*George M. Carleton,* for State.

*Harold J. Rubin,* for defendant.

SITTING: FELLOWS, C. J., WILLIAMSON, WEBBER, BELIVEAU, TAPLEY, JJ., MURRAY, A. R. J.

WEBBER, J.    The respondent here was charged with operation of a motor vehicle while under the influence of intoxicating liquor.  A jury heard the evidence and adjudged the

respondent guilty. During the course of his charge to the jury the presiding justice gave the following instruction:

"Now collaterally there has been comment in this case relative to the presence or absence or the circumstances involved as regards a blood test, and I want to disabuse your mind of one thing made in argument. The statute or the law in the case and applicable to these cases does provide that if a blood test is taken that under certain circumstances with which you are not now concerned, the result of that test is admissible in evidence and goes in with all the other facts to aid you in determining the issue. There is no law in Maine which gives the accused the right to have a blood test taken. There is no obligation on the part of the arresting officer to provide for a blood test. There is no obligation on the part of an arresting officer to run any errand for an accused. Anything that the officer does or does not do under those circumstances is purely a matter of courtesy, if you care to call it that, or an accommodation to an accused. So that I would have to tell you as a matter of law in the instant case no rights of this accused have, according to the evidence as we have it here, been violated in that regard."

Exceptions were taken to this portion of the charge. The respondent contends that he had a "right to have a blood test taken," which right, he argues, was vouchsafed to him by the statute dealing with the prima facie effect of blood tests in such cases.

The statute in question is R. S. 1954, Chap. 22, Sec. 150. The pertinent portion of the statute reads as follows:

"Evidence that there was, at that time, $7/100\%$, or less, by weight of alcohol in his blood, is prima facie evidence that the defendant was not under the influence of intoxicating liquor within the meaning of this section. Evidence that there was, at that time, from $7/100\%$ to $15/100\%$ by weight of alcohol in his blood is relevant evidence but it is

not to be given prima facie effect in indicating whether or not the defendant was under the influence of intoxicating liquor within the meaning of this section. Evidence that there was, at the time, 15/100%, or more, by weight of alcohol in his blood, is prima facie evidence that the defendant was under the influence of intoxicating liquor within the meaning of this section. All such tests made to determine the weight of alcohol in the blood shall be paid for by the county wherein the violation of the provisions of this section was alleged to have occurred. (Blood tests the expense for which has been paid for by, or charged to, the county or state may be admissible in evidence. Repealed by P. L. 1955, Chap. 94) The failure of a person accused of this offense to have tests made to determine the weight of alcohol in his blood shall not be admissible in evidence against him."

Obviously, the statute does but three things. (1) It establishes the prima facie effect of a showing of certain quantities of alcohol in the blood as tending to prove the presence or absence of influence from the alcohol consumed. (2) It provides protection for the respondent from any prejudice which might result from his refusal or failure to have tests made. (3) It provides for payment for such tests if they are made. The statute itself establishes no rights as to the making of tests and imposes no obligations on the part of either arresting officers or the respondent.

The test, once properly made, becomes available to either the State or the respondent in exactly the same way that other material evidence is available. It may be said that it is distinguishable from other types of evidence only in one particular and that has to do with the timing of the taking of the blood sample to be tested. By the express terms of the statute, the thing to be ascertained is the per cent by weight of alcohol in the blood "at the time" of the alleged offense. Obviously, there will always be some gap in time between the alleged unlawful operation and the moment of

the taking of the blood sample. The more remote the time of taking the sample, the less persuasive will be the result, especially where it is less than 15/100% by weight of alcohol in the blood and thereby tends to support the contentions of the respondent. If a test proves favorable to a respondent, it is of the utmost importance to him to be able to relate the result to a time as close as possible to the time of the alleged offense. In short, we are dealing with evidence of limited availability which, if not gathered promptly, either cannot be gathered at all or at least can readily lose its evidentiary effect.

We do not think the rights of the respondent are to be ascertained from an examination of the statute. Rather are they determined by the constitutional guarantee that one may be deprived of his liberty only by due process of law. "Due process of law is another name for governmental fair play." Re *John M. Stanley*, 133 Me. 91, 95. Fair play requires, for example, that a respondent in a criminal case must be given a reasonable opportunity to employ and consult with counsel before trial. *Chandler* v. *Fretag*, 348 U. S. 3, 75 S. Ct. 1. We think that for the same basic reasons a respondent charged with operation of a motor vehicle while under the influence of intoxicating liquor is entitled to a reasonable opportunity to attempt to procure the seasonable taking of a blood sample for test purposes. What is reasonable will of course depend on the circumstances. When the respondent is detained under arrest, the opportunity afforded him must be consistent with safe custody. Under ordinary circumstances, a respondent who is orderly and cooperative will be permitted to use the telephone to communicate with a qualified doctor of his own selection. In many places of temporary detention it is the practice of the officers to call a doctor at the request of the respondent. There is never certainty that these efforts will be successful or that a doctor will be procured in time to make an effective test. If all reasonable efforts fail and no blood sample is in

fact procured, no rights of the respondent are infringed for his right is not to have a test sample taken but *only to have a reasonable opportunity* to attempt to gather the desired evidence. When the respondent is held incommunicado and his requests for assistance in procuring a doctor are unreasonably ignored or refused by the detaining officers, it may be said that the respondent is denied the essentials of governmental fair play. Officers charged with law enforcement must always be mindful that the public has as great an interest in the vindication of the innocent as it does in the punishment of the guilty.

We find nothing in the foregoing statement which is not in harmony with the expressions in *State* v. *Demerritt,* 149 Me. 380. In that case the respondent made the ingenious contention that by not arresting him forthwith, the State lulled him into a feeling of security as a result of which he failed to procure a blood test. The case in essence holds that one who is free and not under restraint can hardly contend that he does not have a reasonable opportunity to obtain evidence; and that the State is under no obligation to make an immediate arrest but is only limited by the Statute of Limitations. It is true that in the opinion casual reference is made to a "right to have a blood test," but a reading of the phrase in context makes it obvious that the only "right" under consideration was the right to a reasonable opportunity to seek the desired evidence. In this respect the opinion made direct reference to the requirement of due process.

Applying these principles to the matter before us, we find no error below. The respondent took the stand in his own behalf. He testified that after being locked in his cell, he "hollered" to the officers and demanded a blood test; that one of the officers asked him what doctor he wanted; that he designated a "Dr. J. Smith" as his choice; that the officer at once instructed the desk man to call that doctor;

that the officer then reported that Dr. Smith was busy on a case and "you can't get him." The respondent does not contend that he called out to the officers again with reference to procuring a doctor, but he admits that within fifteen minutes thereafter upon his request he was permitted to use the telephone and communicate with his wife. He in no way suggests that he was prevented from using the telephone to call another doctor or from requesting his wife to procure one for him. In determining whether an issue arose to be submitted to the jury, we consider only the evidence most favorable to the respondent and disregard the testimony of the officers which indicated that the respondent in fact wanted no doctor except Dr. Smith. On this state of the evidence, then, no issue as to "reasonable opportunity" was presented as a jury question. That the respondent failed to take advantage of the reasonable opportunity which was available to him was a matter of his own choice. The officers were under no obligation to try to procure a doctor of their own selection regardless of the wishes or preferences of the respondent. Where the respondent failed to pursue the matter of a blood test further, one can only conclude that he no longer desired one. The decision was his to make and his alone.

There was no occasion for the presiding justice to instruct the jury on any issue pertaining to a blood test except as the necessity arose from the final arguments of counsel. The record does not disclose what these arguments were, but we infer from the statements in the charge that counsel for the respondent contended that essential rights of the respondent had been violated. Viewed in this light, the instructions were entirely accurate and sufficient. Had an issue been raised by the evidence, it would have been helpful and perhaps requisite to have distinguished for the jury between a right to have a blood test and a right to a reasonable opportunity to attempt to procure a blood test. On the state of the evidence, however, reasonable and reasoning minds

could not differ and could only find that the respondent had been afforded the reasonable opportunity to which he was entitled as a matter of fair play. Therefore no such additional and explanatory instruction was required and the respondent takes nothing by his exceptions to the instructions as given.

*Exceptions overruled.*

*Judgment for the State.*