**STATE of Maine**

v.

**Arthur M. ALLEN.**

Supreme Judicial Court of Maine.

Sept. 9, 1977.

Michael Povich, Dist. Atty., James E. Patterson, Asst. Dist. Atty., Ellsworth, for plaintiff.

McRae Werth, Robert H. Vaughan, Blue Hill, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ.

WERNICK, Justice.

In a proceeding originating by Complaint in the District Court, District Five, Division of Central Hancock and transferred on October 9, 1975, to the Superior Court (Hancock County) defendant was tried without a jury on April 13, 1976, on the charge that he had operated a motor vehicle on September 24, 1975 in Ellsworth while under the influence of intoxicating liquor (29 M.R.S.A. § 1312). Defendant was found guilty and has appealed from the judgment of conviction.

Defendant had been arrested shortly before midnight on September 24, 1975 on the charge for which he was ultimately tried. He was taken to the Hancock County Jail situated in Ellsworth. There, the arresting officer, invoking Maine's so-called "implied consent" law,[1] requested defendant to submit to a chemical test to determine the alcohol level of his blood. The officer informed defendant that this could be done by a test of either defendant's breath or blood.

Defendant agreed to a test of his breath. Because defendant had been smoking, the officer decided to wait approximately 15 minutes before administering the breath test. As the officer was commencing to administer the test, defendant decided not to have it. To avoid misunderstanding the officer again asked defendant whether he would submit to a test of his breath. Defendant refused a second time. The police officer then disposed of the kit for administering a breath test, throwing it into a trash can.

---

1. 29 M.R.S.A. § 1312, which provides:

"Any person who operates or attempts to operate a motor vehicle within this State shall be deemed to have given consent to a chemical test to determine his blood-alcohol level by analysis of his blood or breath, if arrested for operating or attempting to operate a motor vehicle while under the influence of intoxicating liquor.

"He shall be informed by a law enforcement officer of the tests available to him, and said accused shall select and designate one of the tests. At his request he may have a test of his blood administered by a physician of his choice, if reasonably available.

"1. *Prerequisites to tests.* Before any test specified is given, the law enforcement officer shall inform the arrested person of the consequences of his refusal to permit a test at the direction of the law enforcement officer. . .

"2. *Hearing.* If a person under arrest refuses upon the request of a law enforcement officer to submit to a chemical test to determine his blood-alcohol level by analysis of his blood or breath, none shall be given. . . . [H]is license or permit and his privilege to operate . . . [shall be] suspended. Such suspension shall be for a period of 3 months for a first refusal . . . . If such refusal is a 2nd or subsequent refusal . . . such suspension shall be for a period of 6 months."

As soon as this had happened (approximately 20 minutes having elapsed since defendant's initial agreement to submit to a test of his breath), defendant told the officer that he now wanted a test of his blood. The officer refused to become further involved, explaining to defendant that his interest had ended once defendant had agreed to submit to a breath test and then had twice refused it.

After these above-described events, and when not more than 35 minutes had elapsed from the time defendant was brought to the Sheriff's Office, defendant spoke with an attorney. He thereafter made no further inquiry about, or request for, the administration of a test to ascertain the alcohol level of his blood.

Three issues are involved in defendant's appeal: (1) whether the refusal of the officer to comply with defendant's request for a test of his blood was a violation of defendant's constitutional right to due process of law; (2) whether the police officer had violated the provisions of the "implied consent" statute because, as claimed by defendant, he had failed to inform defendant of the penalty defendant would suffer for refusing a test to ascertain the alcohol level of his blood; and (3) whether defendant's conviction in a trial held without a jury must be reversed on appeal because, according to defendant, the record shows inadequate compliance with the prescriptions of Rule 23(a) M.R.Crim.P. concerning waiver of a trial by jury.[2]

We deny the appeal.

■ Defendant failed to save at the trial level all of the above-mentioned three issues and, hence, they may be given appellate cognizance only if they involve error so serious as to have deprived defendant of a fair trial.

■ In such context the second issue—that defendant was not adequately informed by the officer of the penalty for refusing to submit to an appropriate test to ascertain the alcohol level of his blood—is plainly without effect, here, upon the fairness of defendant's trial. The "implied consent" statute prescribes as the consequence of such failure that "the test results shall be inadmissible in evidence." *State v. Granville*, Me., 336 A.2d 861, 863 (1975). At the instant trial no evidence was offered concerning the results of any test to ascertain the alcohol level of defendant's blood and, hence, it was immaterial to the outcome of the trial whether or not defendant had been adequately informed of the penalty for refusing to submit to the test requested by the arresting officer.

The first and third of the above-stated issues could affect the basic fairness of defendant's trial and, therefore, we investigate them to ascertain whether either of them in fact deprived defendant of a fair trial.

We turn, first, to the contention that the police officer's refusal to comply with defendant's request to administer a test of defendant's blood was in all the circumstances a violation of defendant's constitutional right to due process of law.[3]

■ In the present context, the governmental "fair play" conception of constitutional due process of law may mandate that a police officer shall not interfere with the reasonable opportunity, consistent with the demands of safe custody, of a defendant to procure the seasonable taking of a test which might provide evidence in defendant's behalf. *State v. Munsey*, 152 Me. 198, 127 A.2d 79 (1956). Beyond this, however, there is no constitutional duty of a police officer *affirmatively* to assist the defendant

2. Rule 23(a) M.R.Crim.P. provides:
   "*(a) Trial by Jury; Waiver.* The defendant with the approval of the court may waive a jury trial. The waiver must be in writing."
3. Defendant has made only a constitutional claim and has not contended that the conduct of the officer was a violation of a statutory right conferred upon him by the implied consent law. We are satisfied from our examination of the record that even had defendant made such a statutory claim, and had adequately saved it at the trial level, it would have been without merit. See: *State v. Ayotte*, Me., 333 A.2d 436, 439 (1975). A fortiori, defendant could not have been deprived of a fair trial in terms of any violation of statutory rights.

in any undertaking to acquire such possibly exculpatory evidence. *State v. Munsey,* supra; *State v. Ayotte,* Me., 333 A.2d 436 (1975).

■ From the totality of the circumstances, here, it is plain that the police had not interfered with defendant's reasonable opportunity to arrange for a test to show the alcohol level of his blood. Any delays by the police, as well as the refusal of the officer to comply with defendant's belated request that the officer arrange a test of defendant's blood, were attributable to defendant's own uncooperative conduct. Moreover, after the officer had refused to comply with defendant's request that the officer arrange a test of defendant's blood (rather than the breath test defendant had first designated and then refused), defendant spoke with an attorney when there was still opportunity for defendant to arrange such a test. Yet, thereafter defendant said, or did, nothing more concerning a test.

> That the . . . [defendant] failed to take advantage of the reasonable opportunity which was available to him was a matter of his own choice. The officers were under no obligation to try to procure a doctor . . . . Where the . . . [defendant] failed to pursue the matter of a blood test further, one can only conclude that he no longer desired one. The decision was his to make and his alone." *State v. Munsey,* supra, 152 Me. at p. 203, 172 A.2d at p. 82.

In all the circumstances there was no violation of the defendant's constitutional right to due process of law.

We turn to the remaining issue of whether the record shows adequate compliance with the requirements stated in Rule 23(a) M.R.Crim.P. for a waiver of jury trial.

The record discloses a "trial designation" form indicating that the trial was to be held "jury waived." The form was signed by defendant's attorney of record, but not by defendant. The issue, therefore, is whether Rule 23(a) requires that defendant *personally* execute the written waiver of trial by jury.

■ We decide that for the purposes of the trial of a misdemeanor, (or its Criminal Code equivalent),[4] the written waiver of jury trial executed by defendant's attorney of record was a sufficient compliance with Rule 23(a).

We point out, initially, that in contrast, for example, to the express requirement in Rule 7(b) M.R.Crim.P. that a waiver of indictment be in a writing *signed* by defendant, Rule 23(a) says only that the defendant may waive a jury trial "in writing." Rule 23(a) thus leaves ambiguous whether the writing may be attributable to defendant, by being signed by his attorney of record, or must bear defendant's own signature.

To assist in resolving this ambiguity we advert to Rule 11 M.R.Crim.P., and its provisions calculated to provide an affirmative record that a defendant's plea of guilty, as embodying the waiver of several constitutional rights (including the right to trial by jury), is voluntarily and knowingly tendered.

In *State v. Chase,* Me., 280 A.2d 550 (1971) we made the point that the requirements to establish a record showing the voluntary and knowing nature of a plea of guilty should be more stringent than those for a waiver of jury trial; a plea of guilty is "fraught with far more serious consequences for a defendant." (p. 551) Yet, Rule 11 M.R.Crim.P. specifying requirements for the taking of a guilty plea, applies only to felonies. In light of the attitude expressed in *State v. Chase,* we think it a fortiori that Rule 23(a) should be held

---

**4.** 17–A M.R.S.A. § 15.1B authorizes a law enforcement officer to make a warrantless arrest for a Class D or Class E crime committed, or being committed, in his presence. In this context, then, the Criminal Code itself substitutes Class D and Class E crimes for the misdemeanor concept previously employed. Moreover, amendments to the Rules of Criminal Procedure in the Superior Court made in response to the Code's elimination of the misdemeanor-felony classification reflect the pattern that Class D and Class E crimes are substituted where misdemeanor was previously utilized. We therefore deem Class D and Class E crimes to be the Criminal Code equivalents of misdemeanors.

satisfied in non-felony situations if the record shows a written waiver of jury trial *legally attributable* to defendant,—as by the written waiver here signed by defendant's attorney of record.

This conclusion is further supported by the rationale underlying Rule 43 M.R. Crim.P. which authorizes misdemeanor proceedings to be conducted entirely in the absence of defendant without need of a record showing of defendant's written consent (as is required by federal Criminal Rule 43). Surely, if Maine law requires for a misdemeanor proceeding that the record show no more than the participation of an attorney of record for purposes of the conduct and disposition of the entire case, it is not reasonable to interpret Rule 23(a) as requiring in misdemeanor proceedings a record showing defendant's personally executed written waiver of a jury.[5]

The entry is:

*Appeal denied.*

All Justices concur.

---

**5.** In view of our conclusion that in misdemeanor proceedings (or Criminal Code equivalents thereof) a record waiver of trial by jury signed by defendant's attorney of record is a sufficient compliance with Rule 23(a), we do not reach, and presently suggest no opinion on, the question whether on a record showing a purported, but inadequate, compliance with Rule 23(a), a conviction obtained in a trial without a jury will be reversed in a direct appeal as distinguished from a collateral post-conviction proceeding in which evidence may be taken to establish whether, or not, *in fact*, defendant had made a voluntary and knowing waiver of his constitutional right to trial by jury. *Morgan v. State*, Me., 287 A.2d 592 (1972) would suggest the need for such post-conviction evidentiary proceeding. However, *State v. Smith*, Me., 365 A.2d 1036 (1976)—in which (as shown by the record in that case) a felony, "aggravated assault", was involved—contains a dictum to the effect that when the record reveals a *total* failure of compliance with Rule 23(a), a conviction produced by a trial without a jury might be subject to reversal on direct appeal.