**STATE of Maine**

v.

**William H. LANDRY, Jr.**

Supreme Judicial Court of Maine.

Argued March 2, 1981.

Decided May 1, 1981.

Alan Kelley (orally), Asst. Dist. Atty., Skowhegan, for plaintiff.

Hunt & Alsop, John C. Hunt (orally), Skowhegan, for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS, GLASSMAN * and CARTER, JJ.

McKUSICK, Chief Justice.

Following trial before a jury in the Superior Court (Somerset County), defendant William Landry was convicted of operating a motor vehicle under the influence of intoxicating liquor, 29 M.R.S.A. § 1312(10) (Supp.1980), and of operating beyond license restriction, 29 M.R.S.A. § 530(1)(B) (Supp.1980). On his appeal Landry attacks both convictions, claiming that (1) the Superior Court should have granted his motion to dismiss the first charge because the police unjustifiably refused his request for a blood test; and (2) the evidence was insufficient to support a conviction on the second charge. We affirm both judgments of conviction.

From the testimony of Fairfield police officer Richard Harding, the only witness called by the State, the jury would have been warranted in finding the following facts. In the evening of December 22, 1979, around 10:30 p. m., Landry entered an intersection from the Davis Road in Fairfield, without even slowing at a stop sign. He attempted to turn left, but swerved, almost going into a ditch. After halting and backing up, he was stopped by Harding and fellow officer Eric Hunt. Landry smelled of alcohol, his speech was somewhat slurred, he staggered upon emerging from the driver' seat and kept his balance only by bracing both hands against the outside of the car. When he could not, or would not, perform a field sobriety test, the officers arrested him for operating under the influence. Landry did not cooperate in getting into the cruiser. After placing him inside and giving him *Miranda* warnings, the officers read him a form explanation of the "implied consent" law on blood-alcohol tests.[1] Landry responded that he would take no test until he could arrange by telephone to have his car picked up by friends instead of towed by the police. Harding

---

* GLASSMAN, J., sat at oral argument and in the initial conference but did not participate further in this decision.

1. 29 M.R.S.A. § 1312 (since repealed and replaced by P.L. 1980, ch. 701, § 32) provided in pertinent part:

Any person who operates or attempts to operate a motor vehicle within this State shall be deemed to have given consent to a chemical test to determine his blood-alcohol level by analysis of his blood or breath, if arrested for operating or attempting to operate a motor vehicle while under the influence of intoxicating liquor.

He shall be informed by a law enforcement officer of the tests available to him, and said accused shall select and designate one of the tests. At his request he may have a test of his blood administered by a physician of his choice, if reasonably available.

1. **Prerequisites to tests.** Before any test specified is given, the law enforcement officer shall inform the arrested person of the consequences of his refusal to permit a test at the direction of the law enforcement officer. . . .

2. **Hearing.** If a person under arrest refuses upon the request of law enforcement officer to submit to a chemical test to determine his blood-alcohol level by analysis of his blood or breath, none shall be given. . . . [H]is license or permit and his privilege to operate . . . [shall be] suspended. Such suspension shall be for a period of 3 months for a first refusal . . . . If such a refusal is a 2nd or subsequent refusal . . . such suspension shall be for a period of 6 months.

told him that towing was inevitable since his car had become a police responsibility. The officers repeated two or three times their request that he elect a blood or breath test, each time reading from the form. Landry continued to insist that he first be allowed to call friends to move his car. The tow truck arrived at 10:51 p. m. The cruiser left for the police station shortly thereafter. Once Landry was "processed," the police allowed him to use a telephone. Apparently about to be bailed, he called to have someone pick him up and then, at about 11:25 p. m., he for the first time requested a blood test. At that point the police refused.

## I

Defendant Landry maintains that the refusal of the police to assist him in acquiring potentially exculpatory evidence violated both a statutory right, 29 M.R.S.A. § 1312, and a Fourteenth Amendment due process right. He cites *State v. Munsey*, 152 Me. 198, 127 A.2d 79 (1956), for the principle that due process requires that a person charged with operating under the influence be afforded a "reasonable opportunity" to get a blood test. In Landry's view the opportunity afforded him in the cruiser was not reasonable because the test itself could not be administered there. Both blood and breath test kits were at the police station. Landry would thus have been taken to the station regardless of his election of tests.

■ As we review the record, we see no statutory or constitutional violation in the challenged conduct of the police. Landry was uncooperative from the outset. He would not attempt a field sobriety test. He had to be half lifted into the cruiser. And he insisted on exercising a purported right to arrange himself for the safe removal of his car before he would respond to the officers' request for an election. After his arrest, Landry had no right to find friends to remove his car. He did not even have a "right," only a power, to refuse to submit to

blood-alcohol testing. *State v. Plante*, Me., 417 A.2d 991, 993 (1980). It is immaterial where an arresting officer informs a defendant of the tests available to him. He may do so at the police station, *see, e. g., State v. Copeland*, Me., 391 A.2d 836 (1978), at the scene of the arrest, *see, e. g., State v. Deering*, Me., 384 A.2d 447 (1978), or at any point in between.

■ After the officers in the case at bar explained to Landry that towing his car could not be avoided and that a telephone call would thus be useless, they several times extended to him further opportunity to elect a blood or breath test. Landry's continued insistence on a nonexistent right was, under the circumstances, justifiably deemed a refusal to take either test. Once an arrestee voluntarily refuses a reasonable opportunity to elect a chemical test, the police need not go out of their way to coddle a later change of mind. *See State v. Allen*, Me., 377 A.2d 472 (1977).

## II

At trial it was stipulated that on the day of his arrest Landry's license was restricted to "operation between 6:00 a. m. to 6:00 p. m., otherwise plowing or road work only." The State's evidence warranted a conclusion that Landry was operating after 6:00 p. m. and was not snowplowing. Whether he was out to perform "road work," however, was not directly addressed in the State's case. Its only evidence on the point was Officer Harding's testimony that

> during the processing, he was advised that he would also be summonsed for operating beyond restriction, and he said he was not operating beyond restriction as he was called to the residence on the Davis Road to work on a vehicle.

At the end of the State's case, defendant Landry moved to be acquitted of the charge of operating beyond license restriction on the ground of insufficient evidence to convict.[2] The presiding justice denied his mo-

---

**2.** Landry referred to his motion as a motion to dismiss. Because the motion raised a question as to the sufficiency of the evidence, we treat it as a motion for a judgment of acquittal. M.R. Crim.P. 29(a).

 

tion.[3] Instead of then resting and seeking to attack the State's *prima facie* case on appeal, Landry went on the stand to testify in his own behalf. He said, in pertinent part, that he was an automobile mechanic by trade; that sometime before 7:00 p. m. on December 22 his mother received a request by telephone that he drive out to repair a friend's car that he had broken down on Davis Road; that he went to his shop in Norridgewock to get tools, then proceeded to Davis Road to look for the car, arriving there shortly after 9:00 p. m.; and that when stopped by the police he had just finished one pass down Davis Road in search of the car and was in the process of making a U-turn. In short, Landry, who was the only witness to testify besides Officer Harding, attempted to establish that he was out after 6:00 p. m. to do "road work" and therefore was not operating beyond his license restriction. Obviously the jury did not believe him.

At the close of all the evidence, Landry renewed his motion for judgment of acquittal, which the justice again denied. He now asserts on appeal that

> if his explanation of what he was doing is disbelieved, the finder of fact is left with no evidence as to his purpose in driving that evening. Disbelieving his testimony does not give rise to evidence of a contrary purpose.

We cannot agree. Under the procedural posture of this case, the jury's conclusion that Landry was lying in testifying he was

out to do road work does tend to prove the contrary.

■ A defendant who fails to rest after moving for judgment of acquittal at the close of the State's evidence waives the issue of the sufficiency of the State's case-in-chief. Any subsequent challenge of the sufficiency of the evidence invokes a review of the *totality* of the evidence. Such is the well established law of Maine. *State v. Smith*, Me., 389 A.2d 314, 315 (1978); *State v. Hanson*, Me., 331 A.2d 375, 376 (1975), and cases there cited. The evidence in its totality amply supports Landry's conviction for operating beyond his license restriction. From the discrepancy between Landry's testimony and that of the officer as to the circumstances of his arrest, from the lateness of the hour, and, most importantly, from the substantial showing that Landry was highly intoxicated, the jury was fully warranted in finding beyond a reasonable doubt that his purpose in driving was not "road work."

The entry is:

Judgments affirmed.

All concurring.

---

**3.** Apparently in reference to the above-quoted testimony of Officer Harding, the presiding justice declared: "His [Landry's] explanation didn't sound like road work to me. Motion denied." We note that in her instructions to the jury the justice did not define "road work," but instead explained only that the State must prove that defendant was not engaged in it in order to convict him of operating beyond the license restriction. We also note that defendant failed to request a definition. Asked about this omission during oral argument, defense counsel stated that he had made a tactical decision to allow "road work" to remain undefined. We conclude that error in the instructions, if any, is foreclosed from our consideration. *See* M.R.Crim.P. 30(b).