STATE of Maine

v.

Robert F. ALLEN.

Supreme Judicial Court of Maine.

Argued Sept. 18, 1984.

Decided Dec. 12, 1984.

**954** ■

Anita M. St. Onge (orally), Asst. Atty. Gen., David W. Crook, Dist. Atty., John C. Hunt, Asst. Dist. Atty., Augusta, for plaintiff.

Levey & Gleason, P.A., John S. Gleason (orally), Winthrop, for defendant.

Before McKUSICK, C.J., and ROBERTS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

**McKUSICK, Chief Justice.**

Defendant Robert Allen appeals his conviction in the District Court (Augusta) for operating under the influence of intoxicating liquor. 29 M.R.S.A. § 1312–B (Supp. 1984–1985). On appeal Allen makes two novel legal arguments. First, he asserts that since no *Miranda* warnings were given him and he asked to speak with a lawyer, evidence of his responses to inquiries about his comprehension of the implied consent form was not admissible at trial. Second, Allen contends that 29 M.R.S.A. § 2501 (Supp.1984–1985) requires that a police officer have probable cause, not just articulable suspicion, before making an investigatory stop of a vehicle. The Superior Court (Kennebec County) denied the appeal and so do we.

As Officer Gregory Locsin of the Augusta Police Department responded to a false fire alarm at 1:25 a.m. on April 5, 1983, he noticed a pickup truck accelerating away from the otherwise deserted area of the alarm. As the truck reached a speed of 60 m.p.h., Locsin pursued it and signaled the driver to stop. After the vehicle pulled over, Locsin made observations and conducted a field sobriety test that led him to believe the driver, defendant, was operating under the influence of alcohol. Locsin arrested Allen and drove him to the Augusta police station. There, Locsin did not read Allen any *Miranda* warnings, but did read him the "implied consent form"[1] relating the implied consent to take a test of blood alcohol that by statute is attributed to all drivers in Maine. 29 M.R.S.A. § 1312 (1978 & Supp.1984–1985). After Locsin read each of the nine statements on the form to Allen, Locsin asked Allen if he understood the statement. Defendant did not respond as to the first five statements. After the sixth statement, Allen requested a lawyer. He made a rude remark in response to statement seven, and responded that he did understand statements eight

---

**1.** The first eight statements on the form were the same as those quoted in *State v. Jones,* 457 A.2d 1116, 1117 n. 2 (Me.1983), and the ninth read as follows:

**9.** If you select a breath test, I may determine which type of breath test is to be administered, and I may require the taking of more than one breath sample.

and nine. At the end, defendant requested a blood test rather than a breathalyzer test. The police tried unsuccessfully to get one of the physicians selected by Allen to come to the police station to administer the test. He would not choose another doctor or take the alternative breath test. Allen then signed a statement refusing to take any test.

## I.

At trial Officer Locsin testified to Allen's responses to the questions concerning his duty to take a blood alcohol test. On appeal defendant argues that the District Court erred in admitting evidence of his responses to questions concerning his understanding of the duty to submit to the alcohol test. Allen's argument mingles rights protected by the *Miranda* decision and by the fifth and sixth amendments to the United States Constitution. We uphold the decision below and find that there was no violation of *Miranda* and no violation of Allen's rights under the Federal Constitution.

### A. *Miranda Warnings*

In *South Dakota v. Neville,* 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), the United States Supreme Court held that a police inquiry whether a suspect will take the blood alcohol test is not an interrogation within the meaning of *Miranda,* 459 U.S. at 564 n. 15, 103 S.Ct. 923 n. 15, 74 L.Ed.2d at 759 n. 15. On appeal in the case at bar, defendant attempts to distinguish *Neville* by claiming that what transpired here was more than a mere attempt to ascertain if the suspect was willing to take the test. He contends that the questions posed by the police to ensure Allen understood what he was being told were part of an effort to gather evidence to introduce at trial indicating a "knowing refusal" to take a blood alcohol test, and thus were an interrogation requiring *Miranda* warnings. We reject that argument.

Under the statute, all refusals of the blood alcohol test under the implied consent law must be knowing. *See* 29 M.R.S.A. § 1312 (the defendant "shall be informed by a law enforcement officer" [of his implied consent]). By soliciting a response from Allen the police officer was merely ensuring that defendant understood his legal duty and the consequences of his failing to take any test. This was not an interrogation of Allen.

In addition, the rule Allen advocates is not necessary to avoid the police abuses that *Miranda* was designed to eliminate. In cases where the police officer reads a short list of statements to an OUI suspect and seeks to determine if he understands them, there is little of the subjugation of the suspect's will at which *Miranda* was directed. *See Miranda,* 384 U.S. 436, 457–58, 86 S.Ct. 1602, 1618–19, 16 L.Ed.2d 694 (1966). As the Court in *Neville* noted, "The police inquiry here is highly regulated by state law and is presented in virtually the same words to all suspects." 459 U.S. at 564, 103 S.Ct. at 923, 74 L.Ed.2d at 759.

The recitation of the implied consent form and the inquiries to verify Allen's comprehension did not constitute an interrogation requiring *Miranda* warnings.

### B. *The Sixth Amendment*

The police did not violate Allen's sixth amendment right to counsel by reading the implied consent form to him, and ensuring that he understood it, without counsel present. This is true even though in the midst of the procedure he specifically requested a lawyer. The colloquy between Allen and the police officer did not occur at or after a "critical stage" in the proceedings, and thus no right to counsel had yet attached. *See United States v. Gouveia,* — U.S. —, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984). "The right of counsel does not attach until the initiation of adversary judicial proceedings, ... at that time 'that the government has committed itself to prosecute'." *Id.* — U.S. at ———, 104 S.Ct. at 2298, 81 L.Ed.2d at 154–55 (quoting

*Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972)). In *State v. Jones,* 457 A.2d 1116 (Me.1983), we recently ruled that neither the implied consent law nor the Maine or United States Constitution requires that suspects accused of operating under the influence be given an opportunity to consult with an attorney before submitting to a blood alcohol test. We specifically held that taking a blood test is not a "critical stage" of the prosecution. *Id.* at 1118, n. 5. Clearly, informing a suspect of his duty to take, and the consequences of refusing to take, the blood alcohol test, so as to provide for a knowing waiver of this implied obligation is no more a critical stage of the investigation than the test itself. Accordingly, the right to consult with an attorney does not attach when an OUI suspect is read the implied consent form and asked if he understands it.

### C. *The Fifth Amendment*

■ Applying a fifth amendment analysis to the facts in the case at bar, we find that the court did not err in refusing to suppress Allen's responses. The central issue under the fifth amendment is the voluntariness of the defendant's statements. *State v. Durepo,* 472 A.2d 919, 921 (Me.1984). For good reason, defendant makes no claim that his statements were involuntary. There is not a scintilla of evidence in the record to demonstrate that the responses were anything but completely a product of his free will.

The District Court judge did not err in admitting evidence of Allen's responses as to his understanding of the implied consent form.

### II.

■ On appeal Allen also argues that the trial court erred in refusing to suppress all the evidence gathered after the stop of his vehicle. Defendant contends that in order to *stop* a vehicle a police officer's information must rise to the standard of probable cause. As support for his argument, Allen cites 29 M.R.S.A. § 2501, which provides in pertinent part:

**§ 2501. Examination of vehicles by police officers**

[A] law enforcement officer, if he is in uniform and if he has *probable cause* to believe that a violation of law has taken or is taking place, may, at any time, *stop a motor vehicle for the purpose of arresting* the operator in the case of a criminal violation or issuing the appropriate written process in the case of a criminal or civil violation, or questioning the owner or occupant thereof.

(Emphasis added) Allen then contends that Officer Locsin's knowledge did not meet the probable cause standard, and thus all evidence gathered after the stop should have been suppressed by the trial court.

In the first place, defendant's argument fails as a matter of statutory construction. Section 2501 employs the probable cause standard because it speaks of the quantum of proof needed to stop a vehicle *so that* the operator may be *arrested.* The language of the statute merely refers to "probable cause" as the minimum evidentiary standard for an arrest. *See, e.g., State v. Rand,* 430 A.2d 808, 820 (Me.1981); *State v. Williams,* 412 A.2d 1222, 1224 (Me.1980). However, the plain meaning of section 2501 does not require that the officer have probable cause merely to make an *investigatory stop* of a vehicle. Our decisions discussing vehicle stops have consistently used the "articulable suspicion" requirement of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *State v. Fillion,* 474 A.2d 187, 189 (Me.1984); *State v. Little,* 468 A.2d 615, 617 (Me.1983). A fair reading of section 2501 does not require us to modify the well-established *Terry* principle. *See Eastern of Maine, Inc. v. Vintners Group Ltd.,* 455 A.2d 936, 941 (Me.1983) (statutes should be interpreted so as to achieve the purpose intended by the legislature). Defense counsel concedes that Officer Locsin had an articulable suspicion justifying his stop of Allen's vehicle. The stop was therefore not unlawful. We

need decide no more to reject defendant's attempt to suppress the evidence obtained as a result of the stop.

The entry is:

Judgment affirmed.

All concurring.