STATE of Maine

v.

William J. DEERING.

Supreme Judicial Court of Maine.

April 11, 1978.

David M. Cox, Dist. Atty., Gary F. Thorne (orally), Asst. Dist. Atty., Bangor, for plaintiff.

Eaton, Peabody, Bradford & Veague by Bernard J. Kubetz, Bangor (orally), for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

McKUSICK, Chief Justice.

Following a jury-waived trial in Superior Court, Penobscot County, the defendant William J. Deering was convicted of operating a motor vehicle while under the influence of intoxicating liquor in violation of 29 M.R.S.A. § 1312, as amended (1977 Supp.). Defendant has appealed his conviction.

We deny the appeal.

The testimony at trial supports the following factual conclusions. In the early morning hours of May 14, 1977, Trooper Harry Moran of the Maine State Police was proceeding in an easterly direction in his marked cruiser on Route 1A in Holden. At approximately 2:20 a. m., a westbound vehicle passed him traveling close to and over the center line of the road, at about 25 to 30 miles per hour in what was a 50-mile-per-hour zone. Trooper Moran reversed direction and tailed the other vehicle for a short distance, during which time it continued to weave back and forth within the lane, sometimes going over the center line. Having made these observations, the trooper pulled the vehicle over and requested its operator, the defendant, to produce his license. A strong odor of alcoholic beverage emanated from the open window on the driver's side, and Deering had difficulty in extracting his license from his wallet.

Trooper Moran observed through the open window a six pack of beer, with two cans missing, on the front seat. Deering's face was flushed, his eyes were bloodshot, and he was unable to walk a straight line when requested to do so by the trooper. At that point, Trooper Moran advised Deering of his *Miranda* rights and placed him under arrest.

Upon being advised of his "informed consent" rights, including his right to choose between a blood or breath test, the defendant requested a blood test. After the wrecker arrived for the defendant's vehicle, Trooper Moran drove him directly to St. Joseph's Hospital in Bangor, where the blood test was to be performed. Before administering the test the attending nurse asked Deering to sign a printed hospital form entitled "Consent for Blood Test," which read in part: "I am voluntarily submitting to this test and I further agree to release the said [blank] from any liability whatsoever which may result from the taking of said sample." Deering refused to sign the release, stating that he feared possible infection from the needle. Trooper Moran warned Deering of the consequences of his refusing to take either the breath test, which remained available, or the blood test. Deering continued, however, to demand that St. Joseph's personnel give him a blood test without his signing the release. Deering made no request to be taken to another location for the blood test, and after appropriate warning, Trooper Moran completed the form reporting to the Secretary of State that Deering had refused both tests.

Deering was tried and convicted without any evidence of the results of either a blood or a breath test.

Defendant asserts that the police officer's conduct deprived him of his due process and statutory right to a blood test, which he claims might have exculpated him. That claim is premised upon the alleged unreasonableness of the officer's action in taking him to St. Joseph's Hospital for the requested blood test. The officer was familiar with St. Joseph's practice of requiring execution of a comprehensive release as a condition to its administering the blood test.[1] Under those circumstances, the defendant asserts, the police officer's action in selecting St. Joseph's to perform the blood test deprived him of his right to a reasonable opportunity to obtain a blood test.

We observed in *State v. Ayotte,* Me., 333 A.2d 436, 439 (1975), that:

"It was made clear long before the implied consent law became a part of our drinking-driving statute that a person who is under arrest and charged with operating while under the influence of liquor *is entitled, under due process of law, to have a reasonable opportunity, consistent with safe custody, to procure the seasonable taking of a blood sample for test purposes. State v. Munsey,* 152 Me. 198, 127 A.2d 79 (1956)." (Emphasis added)

As a result of the decision of the arresting officer to seek the defendant's submission to a test, the defendant also had a statutory right to select between the available tests. Once the defendant had made his choice of a blood test clear to the officer, the officer was obliged to cooperate in assisting the defendant to procure his selected test. However, as we said in *State v. Ayotte, supra* at 439, "the effect of the law [29 M.R.S.A. § 1312] is not to guarantee that facilities will always be available for one of these tests of an arrested person."

---

1. Defendant's counsel claims that St. Joseph's was barred from requiring such a comprehensive release by 29 M.R.S.A. § 1312(7), captioned "Liability" and reading:

"No physician, registered nurse or person certified by the Department of Health and Welfare *in the exercise of due care* shall be liable in damages or otherwise for any act done or omitted to be done in performing the act of collecting or withdrawing specimens of blood at the request of a law enforcement officer pursuant to this section." (Emphasis added)

The quoted language does not in terms require the construction placed upon that subsection by defendant's counsel, and for the purpose of this case it is unnecessary for us to decide whether St. Joseph's could lawfully impose the condition.

We find no violation of the defendant's constitutional or statutory rights on the facts of the present case. The defendant at no time requested the police officer to take him to another facility for the blood test; nor did the defendant, although specifically informed of his right to have the test administered by a physician of his own choice, make any such request. Furthermore, the record is devoid of any evidence that any alternative testing facility that would not have required a similarly comprehensive release was reasonably available in that vicinity and at that hour of the night. We conclude, as did the court in *State v. Allen,* Me., 377 A.2d 472, 475 (1977), that "[f]rom the totality of the circumstances, here, it is plain that the police had not interfered with defendant's reasonable opportunity to arrange for a test to show the alcohol level of his blood." After it had become apparent to Deering that St. Joseph's would not administer the test, except upon the condition unacceptable to him, his response was merely to reiterate his demand that St. Joseph's perform the test. At that point, on these facts, the State owed Deering no further statutory or constitutional duty.

We have carefully examined the defendant's other claims on appeal and find them without merit.

The entry must be:

Appeal denied.

Judgment affirmed.

DELAHANTY, J., did not sit.