STATE OF HAWAII, Plaintiff-Appellee, *v.* JAMES MOORE, Defendant-Appellant

NO. 7097

JULY 15, 1980

RICHARDSON, C.J., OGATA, MENOR, LUM AND NAKAMURA, JJ.

302

OPINION OF THE COURT BY RICHARDSON, C.J.

This is an appeal from the judgment of the district court revoking defendant Moore's driving license for six months, pursuant to HRS §§ 286-151 and 286-155,[1] upon defendant's

---

[1] HRS § 286-151 provides that:

Any person who operates a motor vehicle upon the public highways of the State shall be deemed to have given his consent, subject to this part, to a test approved by the highway safety coordinator of his breath or blood for the purpose of determining the alcoholic content of his blood; such person shall have the option to take a test of his breath or blood, or both. The test or tests shall be administered at the request of a police officer having reasonable grounds to believe the person driving or in actual physical control of a motor vehicle upon the public highways is under the influence of intoxicating liquor only after (1) a lawful arrest, and (2) the police officer has informed the person of the sanctions of section 286-155.

HRS § 286-155 provides, in pertinent part, that:

If a person under arrest refuses to submit to a test of his breath or blood, none shall be given, but the arresting officer shall, as soon as practicable, submit an

refusal to submit to chemical testing for alcohol. Finding the defendant's subsequent requests for testing to have vitiated his initial refusal, we reverse and remand for further findings.

## FACTS AND PROCEEDINGS BELOW

On the night of April 19, 1978, Police Officer Robert Mercado observed the defendant making a prohibited left turn from Kona Street onto Piikoi Street in a mauka direction. The defendant then made a right turn onto Kapiolani Boulevard; Officer Mercado followed. On Kapiolani, Officer Mercado observed defendant's vehicle straddling two lanes of traffic. The vehicle, after settling into the center lane, on two occasions drifted to the right and was jerked back abruptly into the center lane. Officer Mercado instructed the defendant to pull over to the side of the road.

Officer Mercado detected the smell of alcohol on defendant's breath. Upon questioning by Mercado, the defendant admitted that he had been drinking. With the defendant's consent, Officer Mercado administered various standard field sobriety tests; the defendant failed to perform the tests satisfactorily. Defendant was accordingly placed under arrest for driving under the influence of intoxicating liquor in violation of HRS § 291-4.[2]

---

affidavit to a district judge of the circuit in which the arrest was made, stating:
(1) That at the time of the arrest, he had reasonable grounds to believe the arrested person had either been driving or was in actual physical control of a motor vehicle upon the public highways while under the influence of intoxicating liquor;
(2) That the arrested person had been informed of the sanctions of this section; and
(3) That the person had refused to submit to a test of his breath or blood.
Upon receipt of the affidavit, the district judge shall hold a hearing as provided in section 286-156, and shall determine whether the statements contained in the affidavit are true and correct. If the district judge finds the statements contained in the affidavit are true, he shall revoke the arrested person's license, permit, or any nonresident operating privilege for a period of six months.

[2] HRS § 291-4 Driving under influence of intoxicating liquor. Whoever operates or assumes actual physical control of the operation of any vehicle while under the influence of intoxicating liquor shall be fined not more than $1,000 or imprisoned not more than one year, or both.

Following his arrest, the defendant was taken to the police station where he was advised of the requirements and sanctions of the Hawaii Implied Consent Law, HRS §§ 286-151 and 286-155. Defendant was then asked to sign the Honolulu Police Department's form entitled "Advising Persons of the Requirements of the Implied Consent Law" (hereinafter "Implied Consent Form").

At trial, Officer Mercado testified that, upon being informed of the Hawaii Implied Consent Law, the defendant stated "that he understood and did not wish to take any test or sign anything. . . ." On cross-examination by the defendant, appearing pro se, Officer Mercado was asked the following:

Q. Okay, now, a very crucial question: You testified that at the Receiving Desk I refused to take the test for alcohol or sign anything.

A. That is correct.

Q. Let's recall back clearly. I refused to sign anything, correct?

A. You refused to sign, exactly as I stated earlier.

Q. Or refused to take a test?

A. Refused to take any test, blood or test exactly as the implied consent is written.

Q. I did this verbally. I said —

A. You verbally stated.

Q. — "I refuse to take a test"?

A. That's correct.

Throughout the trial, defendant contended that his refusal was directed simply against having to sign the Honolulu Police Department's Implied Consent Form, not against having to submit to chemical testing. Defendant testified that he had, after refusing to sign the Implied Consent Form, demanded to be tested on eight separate occasions.[3] The first such demand, according to the defendant, was made within thirteen minutes of refusing to sign the form.

---

[3] The defendant kept a thorough record of his requests to be tested. On direct examination, the defendant provided the court with a list of eight occasions on which he had demanded to be tested, including the names of the police officers present, with exact times specifically noted. The State produced no evidence in opposition.

On the evidence, the district court found "that the arrest was legal, [and that the officer] had reasonable grounds to stop the defendant to check while driving under the influence of intoxicating liquor. He [the defendant] was informed of the sanctions of the section [HRS § 286-155] and the defendant refused to submit to the test." The court accordingly revoked the defendant's driving license for a period of six months.

## OPINION

HRS § 286-155 provides that if a person under arrest refuses to submit to a test of his breath or blood, the arresting officer shall submit an affidavit to a district court judge stating certain facts pertinent to the arrest and refusal.[4] The judge must thereafter conduct a hearing on the truth and correctness of the affidavit. HRS § 286-156. At that hearing, the judge determines:

(1) Whether the arresting officer had reasonable grounds to believe that the person had been either driving or was in actual physical control of a motor vehicle upon the public highways while under the influence of intoxicating liquor;

(2) Whether the person was lawfully arrested;

(3) Whether the arresting officer had informed the person of the sanctions of section 286-155; and

(4) Whether the person refused to submit to a test of his breath or blood.

The defendant herein does not contest the conclusions of the district court which relate to the requirements of HRS § 286-156(1)-(3), as above stated. It is defendant's sole contention on appeal that the district judge erred in concluding that the defendant had "refused to submit to a test of his breath or blood" within the comprehension of HRS § 286-156(4).

The defendant claims, at the outset, that he at no time refused to take a chemical test for alcohol but that he only

---

[4] *See* note 1, *supra.*

refused to sign the H.P.D. Implied Consent Form. It is defendant's position that he was not obligated to sign any document under the provisions of our Implied Consent Law. The defendant accordingly argues that his refusal to sign the H.P.D. form could not operate as a refusal to be chemically tested. We agree.

The Hawaii Implied Consent Law nowhere requires an arrested person to refuse or consent to chemical testing of his blood by written statement; police policy or procedure may not then condition administration of the statutorily prescribed test, to which all motorists impliedly consent, on the further requirement of a writing. The defendant had the right orally to consent to a chemical analysis of his blood. *Hanlon v. Commissioner of Motor Vehicles*, 80 S.D. 316, 319, 123 N.W.2d 136, 137 (1963).[5]

We cannot say, however, that the district court erred in concluding that the defendant initially refused to be chemically tested upon the request of Officer Mercado. Although the defendant repeatedly denied ever refusing to submit to chemical testing, Officer Mercado's testimony stood in direct contradiction. In fact, the cross-examination of Mercado by the defendant only served to reinforce the State's position that the defendant had initially refused to take any chemical test in addition to refusing to sign the Implied Consent Form. The issue was one of credibility; we accordingly defer to the findings of the trial court. *See Molokoa Village Development Co. v. Kauai Electric Co.*, 60 Haw. 582, 592, 593 P.2d 375, 382 (1979); *Keller v. La Rissa, Inc.*, 60 Haw. 1, 3-4, 586 P.2d 1017, 1019 (1978); *Lee v. Wong*, 57 Haw. 137, 143, 552 P.2d 635, 640 (1976).

The defendant further argues, however, that even assuming that he initially refused to be tested, such a refusal was

---

[5] In Peterson v. State, ____ S.D. ____, 261 N.W.2d 405 (1977), the South Dakota Supreme Court held that a motorist who initially refused to submit to a chemical test could not defeat revocation of his driver's license by showing he thereafter changed his mind. The court noted that any statements in *Hanlon* which conflicted with *Peterson* were disapproved. *Id.* at ____ n. 7, 261 N.W.2d at 411 n. 7. We do not believe that the South Dakota Supreme Court has by *Peterson* abrogated the defendant's right orally to consent to a chemical analysis of his blood.

withdrawn by his subsequent requests to be tested. It is the State's position, on the other hand, that an initial refusal can never be rescinded.

It is true that many courts have held that there is a binding "refusal to submit" where a motorist is offered a chemical test and at first refuses or delays in consenting but subsequently changes his mind and requests a test. *See, e.g., Zidell v. Bright,* 264 Cal.App.2d 867, 71 Cal.Rptr. 111 (1968); *Robertson v. State,* 501 P.2d 1099 (Okla. 1972); *Commonwealth v. Schaefer,* 8 Pa. Commw. Ct. 96, 300 A.2d 907 (1973); *Rouse v. State,* _____ S.D. _____, 261 N.W.2d 418 (1978); *Currier v. State,* 20 Wash. App. 16, 578 P.2d 1325 (1978). We, however, decline to hold with a rule of law which would rigidly and unreasonably bind an arrested person to his first words spoken, no matter how quickly and under what circumstances those words are withdrawn. We consider the better rule to be one which takes into consideration the fairness to all parties of permitting an arrested person later to change his mind. *See* 2 R. Erwin, *Defense of Drunk Driving Cases* § 33.06[4] (3d ed. 1979). As was stated by the North Dakota Supreme Court in *Lund v. Hjelle,* 224 N.W.2d 552, 557 (N.D. 1974):

> Since the accuracy of a chemical test under [the Implied Consent Law] does not depend upon its being administered immediately after an arrest, accident or other event, and thus a delay for a reasonable period of time while an arrested person considers or reconsiders a decision whether or not to submit to a chemical test will not frustrate the object of the legislature in enacting [the Implied Consent Law], we hold that where, as here, one who is arrested for driving while under the influence of intoxicating liquor first refuses to submit to a chemical test to determine the alcoholic content of his blood and later changes his mind and requests a chemical blood test, the subsequent consent to take the test cures the prior first refusal when the request to take the test is made within a reasonable time after the prior first refusal; when such a test administered upon the subsequent consent would still be accurate; when testing equipment or

facilities are still readily available; when honoring a request for a test, following a prior first refusal, will result in no substantial inconvenience or expense to the police; and when the individual requesting the test has been in police custody and under observation for the whole time since his arrest.

We adopt the criteria of the North Dakota Supreme Court. We hold that unless a delay would materially affect the test results or prove substantially inconvenient to administer, a subsequent consent may cure a prior refusal to be tested. *See Zahtila v. State,* 560 P.2d 847 (Colo. Ct. App. 1977).

It is uncontroverted that the defendant herein made several requests that a chemical test be administered subsequent to his initial refusal. The defendant testified that the first such request was made within thirteen minutes of his refusal to sign the Implied Consent Form. On remand, it will be defendant's burden to show, by a preponderance of the evidence, that this delay was not fatal to his subsequent consent. *See Zahtila, supra* at 848.

The cause is accordingly reversed and remanded for further findings.

*Mark S. Davis* for defendant-appellant.

*Faye M. Koyanagi,* Deputy Prosecuting Attorney, for plaintiff-appellee.