STATE of Maine

v.

John J. PINEAU.

Supreme Judicial Court of Maine.

Argued June 20, 1984.

Decided April 8, 1985.

R. Christopher Almy, Dist. Atty., Gary F. Thorne (orally), Asst. Dist. Atty., Bangor, for the State.

Gross, Minsky, Mogul & Singal, George Z. Singal (orally), Edward W. Gould, Bangor, for defendant.

Before McKUSICK, C.J., and NICHOLS, WATHEN, GLASSMAN, and SCOLNIK, JJ.

GLASSMAN, Justice.

The defendant, John J. Pineau,[1] appeals from a judgment of conviction entered by the Superior Court, Penobscot County, after a jury found him guilty of operating

---

1. The defendant was previously tried and convicted for the same offense. That conviction was vacated, however, on grounds not related to the instant appeal. *State v. Pineau*, 463 A.2d 779 (Me.1983).

while under the influence of intoxicating liquor (OUI), 29 M.R.S.A. § 1312–B (Supp. 1983–1984).[2] On appeal, the defendant challenges, *inter alia*, the introduction at trial of evidence relating to his failure to take a blood-alcohol test and the court's instructions on this issue. We hold, on the facts of this case, the defendant's conduct cannot be deemed a "failure to comply" with 29 M.R.S.A. § 1312 (Supp.1983–1984)[3] for inculpatory evidentiary purposes, and therefore, the court's instructions were erroneous. Accordingly, we vacate the judgment.

## I.

At approximately 10:37 p.m. on June 19, 1982, Officer David Dekanich of the Orono police stopped an automobile driven by the defendant. After performing a field sobriety test, the defendant was placed under arrest for OUI. At the Orono police station, the defendant was informed of the State's implied consent procedure, specifically, of his obligation to submit to and complete a blood or breath test to measure his blood-alcohol level, and of the penalty imposed for a failure to comply. After a telephone consultation with his attorney, the defendant exercised his right to have the physician of his choice perform a blood test. The defendant telephoned two doctors with whom he was familiar, but neither was able to come to the station to draw a blood sample. The officer again

---

2. In pertinent part, 29 M.R.S.A. § 1312–B provides:

1. Offense. A person is guilty of a criminal violation under this section if he operates or attempts to operate a motor vehicle:
   A. While under the influence of intoxicating liquor and drugs; or
   B. While having 0.10% or more by weight of alcohol in his blood.

3. In pertinent part, 29 M.R.S.A. § 1312 (Supp. 1983–1984) provides:

Implied consent to chemical tests; operation under the influence of intoxicating liquor; penalties

Any person who operates or attempts to operate a motor vehicle within this State shall have the duty to submit to a test to determine his blood-alcohol level by analysis of his blood or breath, if there is probable cause to believe he has operated or attempted to operate a motor vehicle while under the influence of intoxicating liquor. The duty to submit to a blood-alcohol test includes the duty to complete either a blood or breath test.

He shall be informed by a law enforcement officer of the tests available to him, and said accused shall select and designate one of the tests. At the request of a person selecting a blood test, the test may be administered by a physician of his choice, if reasonably available. If the accused selects a breath test, the law enforcement officer may determine which type of breath test, as described in subsection 6, to be administered.

1. Prerequisites to tests. Before any test specified is given, the law enforcement officer shall inform the person as to whom there is probable cause that, if he fails to comply with the duty to submit to and complete a test to determine the level of blood-alcohol at the direction of the law enforcement officer, his license or permit to operate, his right to operate or his right to apply for or obtain a license will be suspended for 180 days or, in the case of a 2nd or subsequent failure to submit to and complete that test within a 6-year period, one year. The officer should also inform the person that the failure to comply with the duty to submit to a blood-alcohol test shall be admissible in evidence against him at any trial for operating under the influence of intoxicating liquor.
....
8. Evidence. The percentage by weight of alcohol in the defendant's blood at the time alleged, as shown by chemical analysis of his blood or breath, or by results of a self-contained, breath-alcohol testing apparatus authorized by subsection 6, shall be admissible in evidence.
....
The failure of a person to comply with the duty required by this section to submit to a blood-alcohol test shall be admissible in evidence on the issue of whether that person was under the influence of intoxicating liquor. If the law enforcement officer having probable cause to believe that the person operated or attempted to operate a motor vehicle under the influence of intoxicating liquor fails to give either of the warnings required under subsection 1, the failure of the person to comply with the duty to submit to a blood-alcohol test shall not be admissible. If a failure to submit to a blood-alcohol test is not admitted into evidence, the court may inform the jury of the fact that no test result is available.
If a test result is not available for a reason other than failing to comply with the duty to submit to a blood-alcohol test, the unavailability and the reason shall be admissible in evidence.

asked the defendant whether he wished a blood or breath test. After a second telephone consultation with his attorney, the defendant responded he would take the former. Officer Dekanich then told the defendant he would take him to St. Joseph's Hospital in Bangor where the test would be performed. The defendant agreed.

Arriving at the hospital at approximately midnight, the defendant and Officer Dekanich were greeted by Donna McLaughlin, a licensed practical nurse. Both McLaughlin and Dekanich testified that McLaughlin advised the defendant that the test would not be given unless he signed a consent form releasing the hospital and its personnel from any liability for harm that might result from the administration of the blood test and that, although he was willing to take the test, the defendant refused to sign the release. Officer Dekanich testified he construed the refusal to sign the release as a failure to comply with the defendant's obligation to submit to a blood-alcohol test. He made no further attempt to obtain a chemical sample from the defendant.

Prior to trial, the defendant's motion in limine as to the admissibility of evidence relating to the defendant's failure to submit to a chemical test to determine blood alcohol was denied. At the close of all the evidence, the defendant renewed his previously denied motions for judgment of acquittal and to strike all evidence regarding the failure to take the blood test. The defendant argued the State had not shown that he had "failed to comply" with his statutory obligation because it had not offered him the test required by the statute, that is, a test unburdened by an unreasonable condition. Although conceding the defendant was offered the test only on condition he waive any rights he might otherwise have against the hospital and its employees, the presiding justice denied the motions. The defendant also objected to the court's instructions that the failure could be considered on the issue of whether

he was under the influence of intoxicating liquor. The jury returned a verdict of guilty of OUI, and this appeal follows. The defendant contends, *inter alia*, that the admission of his "failure to comply" is a violation of his state and federal constitutional right against self-incrimination and that the court's instructions were erroneous. Because we decide this case under the authority of the applicable statutes, we do not reach these constitutional claims.

## II.

■ To deter an individual from operating a motor vehicle while under the influence of intoxicants, and to promote highway safety, *see State v. Bellino*, 390 A.2d 1014, 1021 (Me.1978), the Maine implied consent law provides that any person operating a motor vehicle in Maine consents to submit to and complete a blood or breath test to determine blood-alcohol level. 29 M.R.S.A. § 1312. The duty to take a test, however, is not absolute. To prevent potentially violent confrontations between the police and the OUI suspect, the suspect may refuse to submit to a blood-alcohol test. Should he do so, his failure to comply with the statutory obligation is admissible in evidence on the issue of whether he was operating while under the influence. 29 M.R.S.A. § 1312(8).

In *State v. Deering*, 384 A.2d 447 (Me. 1978), and *State v. Copeland*, 391 A.2d 836 (Me.1978), we held the defendant, who was required to sign a release to get a blood test and refused to do so, was not denied his due process right to a "reasonable opportunity" to obtain possibly *exculpatory* evidence.[4] Here, however, the defendant does not raise the "reasonable opportunity" issue. He argues that his refusal to sign the release, resulting in the hospital's denial of the test, was not a "failure to comply" with his duty to submit to a blood test such as may be used as *inculpatory* evidence against him at a trial for operating under

4. *Deering* expressly avoided deciding whether the hospital could lawfully impose the condition of a general release on administration of the state-mandated test. 384 A.2d at 448, n. 1.

the influence. Thus, this case is not controlled by *Deering* and *Copeland.*

If there is probable cause to believe that a motorist has operated a vehicle under the influence of liquor, 29 M.R.S.A. § 1312 provides, "He shall be informed by a law enforcement officer of the tests available to him, and said accused shall select and designate one of the tests." *See State v. Deering,* 384 A.2d at 448. The sanction for failure to do so is the automatic loss of license to operate a motor vehicle. 29 M.R.S.A. § 1312(2). We have recently held that a motorist "must affirmatively and actually refuse the test by word or conduct in order to come within the subsection (2) exception . . . ." *State v. Adams,* 457 A.2d 416, 421 (Me.1983). Here, the defendant agreed to take the test on the night of his arrest, and remained willing to do so; he did not "refuse" or "fail to comply" with his literal statutory duty.

■ Is the defendant's refusal to submit to an additional condition that results in the hospital's refusal to administer the blood test a "failure to comply" within the meaning of the statute? Phrased more narrowly, does the "test" required by the statute include such a condition? It does not. The statute only imposes the duty to take a blood-alcohol test. It does not require a motorist to take a test and at the same time execute a release of all potential liability.

A Pennsylvania court reversed a license suspension on comparable facts in *Maffei v. Comm. Dept. of Trans.,* 53 Pa.Cmwlth. 182, 416 A.2d 1167 (1980). Applying a statute similar in all respects to that of Maine,[5] the court held that "the motorist's duty to assent to a blood test cannot lawfully be burdened by adding (or upholding) the requirement that he also sign a form devised by a hospital." *Id.* 416 A.2d at 1169.

License suspension is a sanction for refusal to submit to a chemical test, not refusal of a test linked with execution of a release . . . . [T]he trial court erred as

a matter of law in viewing the statutory mandate as being broad enough to cover the two-pronged requirement presented to the motorist here. *Id.*

The ruling that the statute's burden must not be independently increased was reaffirmed in *Sickman v. Commonwealth,* 79 Pa.Cmwlth. 173, 468 A.2d 909 (1983). There the arrestee refused to complete a questionnaire presented to her before the blood test was to be administered. The court followed *Maffei,* holding that this did not constitute a refusal under 75 Pa.C.S.A. § 1547 that would support a license suspension.

The South Dakota Supreme Court reversed a license revocation where the petitioner had agreed to be tested, but refused to sign a form containing "a printed consent or refusal to submit to a chemical analysis." *Hanlon v. Comm'r of Mo. Vehic.,* 80 S.D. 316, 123 N.W.2d 136, 137 (1963). It held that the petitioner "was not obligated to sign any statement or document under the provisions of our Implied Consent law." *Id.* The Hawaii Supreme Court recently followed *Hanlon* on identical relevant facts. *State v. Moore,* 62 Haw. 301, 614 P.2d 931 (1980). That court held the defendant had not "refused" as contemplated by the statute.

The Hawaii Implied Consent law nowhere requires an arrested person to refuse or consent to chemical testing of his blood by written statement; police policy or procedure may not then condition administration of the statutorily prescribed test, to which all motorists impliedly consent, on the further requirement of a writing. *Id.* 614 P.2d at 934.

A case decided by the Vermont Supreme Court presents the converse situation. In *State v. Lyon,* 129 Vt. 141, 274 A.2d 478 (1971), the defendant had initially agreed to submit to a blood test but no doctor was available. He refused to allow the arresting officer himself to draw the blood unless *the officer* signed a waiver of immunity to

---

5. 75 Pa.C.S.A. § 1547.

permit the defendant to sue him if he contracted an infection. Denying certiorari, the court affirmed the trial court's finding that the defendant's refusal was unreasonable because the statute did not provide for "conditional consent to take a sobriety test." *Id.* 274 A.2d at 479.

 These authorities make clear that the statute mandating a blood test requires submission to the test and nothing more. Notably, each of these cases was concerned only with the automatic revocation of the motorist's license. None considered the further question of whether the motorist's refusal was admissible to inculpate him at a criminal trial.[6] If not a proper basis for license revocation, *a fortiori*, the refusal resulting from the imposition of a statutorily unauthorized condition cannot be deemed a failure to comply for inculpatory evidentiary purposes in the criminal prosecution for operating under the influence.

Certainly, "[t]he failure of a person to comply with the duty required ... to submit to a blood-alcohol test shall be admissible in evidence on the issue of whether that person was under the influence of intoxicating liquor." 29 M.R.S.A. § 1312(8) ¶ 5 (Supp.1983–1984). If there is a genuine failure to comply, the court properly "may inform the jury of the fact that no test result is available." *Id.*

The absence of a test result in the defendant's case, however, was due to his refusal to submit to an extra-statutory condition, the signing of a general release. Because such a condition may not be imposed without express statutory authority, the absence of a test result here was for a "reason other than failing to comply" with the required legal duty. As such, this case must be considered under the narrower provisions of § 1312(8) ¶ 6:

> If a test result is not available for a reason other than failing to comply with the duty to submit to a blood-alcohol test,

the unavailability and the reason shall be admissible in evidence.

29 M.R.S.A. § 1312(8) ¶ 6 (Supp.1983–1984). Nothing in this language suggests the State may use the absence of a test result "for a reason other than failing to comply" as inculpatory evidence. Nevertheless, regarding the absent test in the defendant's case, the court instructed the jury that "you may consider that fact on the issue of whether or not the defendant was under the influence." This was error. We hold that under 29 M.R.S.A. § 1312(8) ¶ 6, evidence as to the unavailability of a test result is admissible solely to explain that unavailability. It is not to be considered on the issue of intoxication, and the jury should have been so instructed.

The entry is:

Judgment vacated.

Remanded to the Superior Court for proceedings consistent with the opinion herein.

All concurring.

---

**6.** It should be noted also that *State v. Knightly,* 434 A.2d 531 (Me.1981), *Deering,* and *Copeland* predated the 1981 amendments, effective August

15, 1982, wherein the language "failing to comply with the duty to submit to a blood-alcohol test" replaced "revocation of consent."