**Richard Paul LYNCH, Petitioner, Appellant,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Respondent.**

**No. C8–92–1631.**

Court of Appeals of Minnesota.

March 23, 1993.

**38**

Donald H. Nichols, Curtis D. Brown, Nichols, Kaster & Anderson, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Ronald S. Latz, Special Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by SCHUMACHER, P.J., and LANSING and HARTEN, JJ.

## OPINION

HARTEN, Judge.

Appellant Richard Paul Lynch argues that his refusal of a blood test because of his objection to a routine hospital consent form, followed by his rejection of an alternative urine test, does not constitute refusal to submit to testing for implied consent purposes. We affirm.

## FACTS

On January 26, 1992, Lynch was arrested for driving while under the influence. The arresting law enforcement officer transported Lynch to Riverside Medical Center for alcohol testing. The officer read Lynch the implied consent advisory and asked if he wished to speak with an attorney. Lynch declined.

The officer asked if Lynch would take a blood or urine test. Lynch consented. The officer then specifically requested that Lynch take a blood test and Lynch agreed. When a hospital admission clerk asked Lynch to sign a routine hospital consent to treatment form, Lynch declined.

The officer requested that Lynch take a urine test and told him he would not have to sign a hospital form for a urine test. Lynch said he would not give the officer anything. Lynch rejected the urine test and said he would not sign any form without his attorney. The officer offered to allow Lynch to call an attorney, but he declined. Lynch was then transported to Hennepin County Jail and charged with driving under the influence.

The Commissioner of Public Safety revoked Lynch's driving privileges for refusing testing. A referee held a review hearing and recommended sustaining the revocation. The trial court affirmed the referee's decision. Lynch appeals.

## ISSUE

Does a driver's refusal to sign a routine hospital consent to treatment form prior to the withdrawal of a blood sample, followed by his rejection of a urine test, constitute refusal under the implied consent statute?

## ANALYSIS

Whether one has refused testing is a question of fact. *State, Dep't of Highways v. Beckey*, 291 Minn. 483, 486, 192

N.W.2d 441, 444–45 (1971). On appeal, a trial court's factual findings will not be disturbed unless clearly erroneous. *Id.* at 487, 192 N.W.2d at 445.

■■■ Relying on cases from other jurisdictions, Lynch argues that he did not refuse the blood test because Riverside's consent form impermissibly burdened his statutorily-mandated consent to testing. *See Hanlon v. Commissioner of Motor Vehicles,* 80 S.D. 316, 123 N.W.2d 136, 137 (S.D.1963) (refusal to sign officer's nonstatutory consent form not considered refusal to test); *Hawaii v. Moore,* 62 Haw. 301, 614 P.2d 931, 934 (Haw.1980) (same); *see also State v. Pineau,* 491 A.2d 1165, 1167, 1169 (Me.1985) (refusal to execute hospital release not refusal to test); *Maffei v. Pennsylvania Dep't of Transp.,* 53 Pa. Cmwlth. 182, 416 A.2d 1167, 1169 (Pa. Commw.Ct.1980) (same); *Conrad v. Pennsylvania Dep't of Transp.,* 142 Pa.Cmwlth. 642, 598 A.2d 336, 343 (Pa.Commw.Ct.1991) (same).

Minn.Stat. 169.123, subd. 2(c) (Supp.1991) provides:

> The peace officer who requires a test pursuant to this subdivision may direct whether the test shall be of blood, breath, or urine. Action may be taken against a person who refuses to take a blood test only if an alternative test was offered and action may be taken against a person who refuses to take a urine test only if an alternative test was offered.

Lynch argues that he did not refuse testing because the hospital form nullified the blood test offer in the statute's two-part procedure. No statutory provision required Lynch to sign such a form and the hospital already enjoyed a degree of statutory protection without the form.[1] Lynch was entitled under section 169.123, subdivision 2(c), as is any driver for any reason, to decline the officer's initial offer of a blood test.

Nevertheless, Lynch's argument that the blood test rejection should be disregarded fails under an unavailability analysis. *See, e.g., Gunderson v. Commissioner v. Pub. Safety,* 351 N.W.2d 6, 7 (Minn.1984) (driver who consents to breath test obligated to take alternative test if intoxilyzer inoperative). After rejection of the initial test offer, the focal point under the statute became Lynch's refusal of the urine test. Minnesota law differs from the statutes in the foreign jurisdictions cited by Lynch. Revocation is triggered by rejection of an alternative test after refusal of an initial offer of a blood or urine test.[2] *See* Minn. Stat. § 169.123, subd. 2(c) (action may be taken for blood test refusal only if alternative test offered).

Under the section 169.123, subdivision 2(c), Lynch was required to submit to the urine test after rejecting the blood test. Lynch's unconditional rejection of the urine test, after refusing the blood test, was a refusal. Moreover, this court has also held that a driver who agrees to take a blood test and subsequently changes his mind and insists on an alternate test has refused to submit to testing under the implied consent law. *See Franko v. Commissioner of Pub. Safety,* 432 N.W.2d 469, 472 (Minn. App.1988) (driver bound by initial choice to take blood test despite change of mind because of hospital attendant's ungloved hands).

■■ Lynch also argues that the test offers were insufficient under *Meyers v. Commissioner of Pub. Safety,* 379 N.W.2d 219 (Minn.App.1985) and that he should have been offered a breath test. At the time of *Meyers,* the statute provided:

> The * * * officer * * * may direct whether the test shall be of blood,

---

1. Minn.Stat. § 169.123, subd. 3 (1990) provides:

   The [medical professional] drawing blood at the request of a peace officer for the purpose of determining alcohol concentration shall in no manner be liable in any civil or criminal action except for negligence in drawing the blood.

2. The *Moore* statute allowed the driver to choose either a blood or breath test, or both. *Moore,* 614 P.2d at 932 n. 1. The statutes in *Hanlon, Maffei,* and *Conrad* did not permit the driver to select the type of test. *Hanlon,* 123 N.W.2d at 136–37; *Maffei,* 416 A.2d at 1169; *Conrad,* 598 A.2d at 342. The *Pineau* statute allowed the driver to select either a blood or breath test. *Pineau,* 491 A.2d at 1166 n. 3.

breath, or urine. However, if the officer directs that the test shall be of a person's blood or urine, the person may choose whether the test shall be of his blood or urine.

Minn.Stat. § 169.123, subd. 2(c) (1984).

In *Meyers,* an intoxilyzer operator was not available. The driver therefore agreed to take a blood test, but no test kit was available at the hospital. The driver's subsequent rejection of a urine test was held not to be a refusal because the then-existing statute required that a choice be available. *Id.* at 220–21.

Here, both tests were available and the statute merely required that an alternative to a blood test be offered. The officer properly and effectively offered a urine test after Lynch rejected the blood test.

### DECISION

Lynch's rejection of a urine test after rejecting a blood test constitutes a refusal under Minn.Stat. § 169.123, subd. 4. Under the circumstances, the trial court's finding of a refusal is proper.

**Affirmed.**