Scott E. THOMAS, Plaintiff–Appellant,

v.

STATE of Oklahoma, ex rel. DEPART-
MENT OF PUBLIC SAFETY, De-
fendant–Appellee.

No. 80908.

Court of Appeals of Oklahoma,
Division No. 2.

April 20, 1993.

Rehearing Denied July 6, 1993.

ORDER VACATED.

Allen M. Smallwood, Tulsa, for plaintiff-
appellant.

Michael O'Brien, Oklahoma City, for de-
fendant-appellee.

BRIGHTMIRE, Judge.

Under attack in this driver's license revo-
cation case is: (1) the legal propriety of the
trial court's failure to hold a trial when the
case was first set, and (2) the sufficiency of
the evidence to support the court's finding
that the licensee refused to timely consent
to a sobriety breath test.

We hold it was a prejudicial abuse of
discretion for the court to grant the State's
oral request for a continuance of the trial
de novo on December 29, 1992, over the
objection of the plaintiff, and it was error
not to find that the plaintiff timely consent-
ed to take the requested breath test.

I

At approximately 2 a.m. on January 24,
1992, Officer R.D. Wisdom of the Tulsa
Police Department said he "noticed a black
vehicle squall his tires as he backed out of
a parking space" at a convenience store

parking lot at 4500 South Peoria. According to the officer the car headed south in the parking lot and, "I believe he squalled his tires at that time, [and] he squalled his tires again when he got on the street and went southbound."

The officer, who had been parked across the street from the convenience store, "fell in behind subject vehicle" and, because it was "doing approximately 45 miles an hour in a 35 mile an hour zone ... pulled him over." Upon being stopped, the driver, plaintiff-appellant Scott E. Thomas said he got out of his car, produced his license and insurance verification and, thinking the rapid acceleration on the parking lot was the reason he was stopped, explained to the officer that it became necessary in order to avoid colliding with a car entering the lot "at a relatively high rate of speed." When asked if he had been drinking, Thomas answered that he had had "a beer approximately an hour and a half" earlier.

The officer, on the other hand, said he noticed the driver had "glassy eyes and an odor of alcohol on his breath." He had him step out of the vehicle and have a seat in the police car. He said he then conducted "an HGN test which both of his eyes lacked a smooth pursuit ... which indicated he'd had too much to drink." Significantly, the officer did not mention Thomas had bloodshot eyes, or that his speech was slurred, or that he staggered, or that he could not walk a straight line.

Thomas was, nevertheless, placed under arrest and read the Oklahoma Implied Consent Law. He surrendered his driver's license, was requested to take a breath test, and was taken to jail. The undisputed evidence is that Thomas never actually refused to take a breath test before arriving at the station, but did ask about a blood test. He also asked why the officer was doing this to him, and made other inquiries when asked by the officer if he would take the designated breath test. At the station,

after being booked, Thomas said he wondered why he was not being given the test and twice asked the officer to give it to him. The officer just laughed and said it was too late. Eventually, Thomas was given a copy of the "Officer's Affidavit and Notice of Revocation." The affidavit stated that Thomas had refused to take the designated breath test. It was on the basis of such evidence that the Department of Public Safety entered an order on January 24, 1992, revoking Thomas' driver's privileges.

Thomas sought and obtained an administrative hearing before the Department of Public Safety on November 10, 1992. The hearing officer also concluded such evidence supported the statutorily required prerequisites [1] of a revocation order and one was issued November 19, 1992, revoking Thomas' driving privileges for 180 days commencing December 6, 1992.

Thomas timely filed a petition on December 1, 1992, seeking a de novo district court review [2] of the revocation order.[3] That same day the court set the matter for hearing on December 29. Thomas appeared and announced ready. According to the record made on January 5, 1993, the district attorney appeared on December 29, 1992, and orally asked for a continuance. The plaintiff objected to continuing the case on the ground it was being sought merely because the State "had failed to either subpoena or obtain the appearance of" the arresting officer. The court, nonetheless, granted the State a continuance and reset the case to be heard January 5, 1993.

At the January hearing, the trial court overruled Thomas' renewed objection, sustained the revocation and ordered the 180–day period to commence that day.

Thomas superseded the order and appealed.[4]

---

1. *See* 47 O.S.1991 § 754(E)(2).

2. *See Appeal of Dungan,* 681 P.2d 750 (Okl. 1984).

3. Commencement of the revocation period was stayed by Thomas filing a $250 "Cash Appeal Bond" on December 1, 1992.

4. The revocation period was again stayed by the district court pending resolution of this appeal,

## II

The first issue raised by Thomas is that the district court should have sustained his objection to granting the State a continuance of the case.

The argument is that 47 O.S.1991 § 6–211(E),[5] requires the district court to both enter an order setting the matter for hearing *and* hold a hearing within that thirty-day period and failure to do so "deprived the court of jurisdiction."

■ While we agree Thomas' objection should have been sustained, we do not agree it should have been on the ground of violating the thirty-day hearing period prescribed in § 6–211(E). Here is why. Nearly three quarters of a century ago the high court of this state determined that a statute which required the court to hear certain matters within a prescribed time period encroached on the inherent power of the court to set its dockets and to decide what cases should be tried when [6]—power which, it said, is vested exclusively in the Judicial Department by Article IV, § 1 of the Oklahoma Constitution.[7] Or, as the Supreme Court later put it, the inherent powers entrusted to the judicial branch of the government include the "exclusive authority to manage its own affairs."[8] Such authority

"includes power to make, and enforce, reasonable rules for orderly procedure before courts," and when "the legislature acts with regard to any matter over which courts have ultimate authority, and acts in a way to deprive courts of that authority, the legislative act is an unconstitutional abridgement of the principle of separation of powers."[9] Thus, it is clear that while the legislature has the power to establish rules and procedures which vest the courts with jurisdiction, the power to hear and decide justiciable controversies lies with the court—power which includes inherent authority to decide when to hear and decide controversies.[10] In other words the legislature may not, once jurisdiction is conferred, dictate the time within which the court shall or shall not act. For to do so is:

"unconstitutional and void, it being an attempt by the legislative branch of the government to usurp the powers conferred upon the judicial branch of the government by the Constitution and to limit or abolish the judicial discretion belonging to the courts and necessary for the proper administration of justice."[11]

■ Here the court had inherent power, hence jurisdiction, to set and hear the case within or without the thirty-day period. It

during which time, according to the court's order, Thomas "will be issued a temporary driving permit entitling him to full driving privileges."

5. Title 47 O.S.1991 § 6–211(E), provides in pertinent part that upon the timely filing of a petition seeking district court review of a revocation order:
"It *shall be the duty of the district court to enter an order setting same for hearing not less than fifteen (15) days and not more than thirty (30) days from the date the petition is filed.*" (Emphasis added.)

6. *Atchison, T & SF Ry. v. Long,* 122 Okl. 86, 251 P. 486 (1926). Among other things the court adopted the reasoning and language of a New York case which struck down a New York statute which sought to require the courts to give preference to certain cases. It did so on the ground that such a requirement was an impermissible invasion of the judiciary's implied powers.

7. Okl. Const. art. IV, § 1 reads in pertinent part: "the Legislative, Executive, and Judicial departments of government shall be separate and distinct, and *neither shall exercise the*

*powers properly belonging to either of the others.*" (Emphasis added.)

8. *Petuskey v. Cannon,* 742 P.2d 1117, 1120 (Okl. 1987).

9. *Puckett v. Cook,* 586 P.2d 721, 723 (Okl.1978).

10. *Id.* An appeal from an order of the Department of Public Safety suspending or revoking a driver's license is a special proceeding and *the district court has only such jurisdiction as it is expressly conferred by statute. Appeal of Lewis,* 208 Okl. 610, 258 P.2d 173 (1953).

11. *Atchison, T & SF Ry. v. Long,* 122 Okl. 86, 251 P. 486 (1926) (syllabus by the court). It should be mentioned parenthetically at this point, however, that the court had earlier achieved the same result in a somewhat less confrontational manner by simply declaring an impermissible intrusion contained in the state constitution to be "directory" rather than "mandatory." *See Hamilton v. International Bank of Haskell,* 114 Okl. 28, 242 P. 858 (1924).

also had the authority to pass the matter on the motion of a party who complied with the relevant statutory requirements. The record discloses that the state orally requested a continuance and the granting of that request gave birth to a more serious question: Whether the court abused its discretion and exceeded its authority in granting the State's request over the objection of the plaintiff.

We hold it did—a result which supports the obvious legislative interest in achieving an early disposition of DUI cases.[12]

To begin with, 12 O.S.1991 § 668 requires that:

"A motion for a continuance, on account of the absence of evidence, can be made *only upon affidavit*, showing the materiality of the evidence expected to be obtained, and that due diligence has been used to obtain it ... and if it is for an absent witness, the affidavit must show where the witness resides, if his residence is known to the party, and the probability of procuring his testimony within a reasonable time, and what facts he believes the witness will prove, and that he believes them to be true. If thereupon, the adverse party will consent that on the trial the facts, alleged in the affidavit shall be read and treated as the deposition of the absent witness, or that the facts in relation to other evidence shall be taken as proved to the extent alleged in the affidavit, no continuance shall be granted on the ground of the absence of such evidence." [13]

■ The State does not deny that on December 29, 1992, it orally sought a continuance because of an absent witness. The record, including the docket sheet, fails

to disclose that the State filed an affidavit-supported motion for a continuance in compliance with the requirements of § 668. Without such a motion the court had no legal basis for granting the continuance over the objection of the plaintiff under the circumstances. In doing so the court abused its inherent discretion thus infringing on the plaintiff's due process right.

### III

Thomas' second proposition—that the evidence is that he did indeed agree to take the requested breath test shortly after arriving at the police station, less than an hour after the arrest—also has merit.

■ It was arbitrary and unfair for the officer to reject Thomas' request for the breath test made after being booked within some 45 minutes after the arrest.[14] This, coupled with the comments made by the court after watching the hour-long video tape made during the booking, suggests that the DUI charge was a questionable one at best:

(1) With regard to the issue of whether the officer was justified in concluding that Thomas had refused to take the breath test the court said:

(1) "It's obvious to me that both parties involved in this, Officer Wisdom as well as the plaintiff, Mr. Thomas, assumed what they were doing and saying was interpreted by the other party in a manner different than what they intended;" and

(2) "[D]uring the viewing of the tape, it was obvious to this Court that other matters that the defendant testified to were borne out by the tape.

"We ... decline to hold with a rule of law which would rigidly and unreasonably bind an arrested person to his first words spoken, no matter how quickly and under what circumstances those .words are withdrawn. We consider the better rule to be one which takes into consideration the fairness to all parties of permitting an arrested person later to change his mind."
*See State v. Moore,* 62 Haw. 301, 614 P.2d 931, 935 (1980).

---

**12.** *Andrews v. Oklahoma Dep't of Public Safety,* 593 P.2d 492 (Okl.1979); *Peters v. Oklahoma Dep't of Public Safety,* 557 P.2d 908 (1976).

**13.** Emphasis added.

**14.** *See Baldwin v. State ex rel. Dep't of Public Safety,* 849 P.2d 400 (Okl.1993). There the court adopted the following language of the Hawaiian high court in a situation where the motorist had refused to take the test or sign anything but about thirteen minutes later began a series of eight separate requests to be tested:

"It was obvious to this Court, as well as from the testimony of the defendant's witness there was no testimony about slurred speech. I heard none on that tape.

"There was no evidence of staggered gait. I saw none on the tape."

## IV

We hold that the court erred in overruling the plaintiff's objection to the State's request for a continuance on December 29, 1992, and in failing to find that the plaintiff had timely requested to be given the breath test. Since the burden of proof lay with the State, and it was unable to proceed, the court should have sustained the plaintiff's objection to the continuance and vacated the revocation at that time.

Order of Revocation vacated.

REIF, V.C.J., concurs.

RAPP, P.J., concurs in result.

RAPP, Presiding Judge, concurring in result

I concur only in the result reached.

I cannot agree with the majority's conclusion holding the statutory mandate for speedy trial is an impermissible incursion upon the court's inherent power to set its dockets. While I agree the court has certain rights, it is equally true that the courts and the legislature have an obligation to the litigants to ensure protection of their statutory and constitutional rights under both the United States and Oklahoma Constitutions.

The majority, in its rush to judgment, overlooks several items which stand as substantial stumbling blocks in the decisional path. The decision's foundational rationale is premised on a 1926 civil law decision involving a state initiative petition regulating tax assessment methods.[15] It has been long recognized that courts are under constitutional and statutorily mandated time constraints in criminal and quasi criminal proceedings as is here the case. For example, in the area of mandated trial time requirements 22 O.S.1991 § 812 requires a trial within term time if the defendant has not requested postponement.[16] Then there are the Oklahoma Constitutional Requirements set out in Art. 2, §§ 2 and 20,[17] and the U.S. Constitution's 6th Amendment requirements.[18] Moreover, in criminal proce-

**15.** *Atchison, Topeka & Santa Fe Ry. Co. v. Long,* 122 Okla. 86, 251 P. 486 (1926).

**16.** 22 O.S.1991 § 812 states:

If a defendant, prosecuted for a public offense, whose trial has not been postponed upon his application, is not brought to trial at the next term of court in which the indictment or information is triable after it is filed, the court must order the prosecution to be dismissed, unless good cause to the contrary be shown.

**17.** Section 2 states:

All persons have the inherent right to life, liberty, the pursuit of happiness, and the enjoyment of the gains of their own industry. Section 20 states:

In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury of the county in which the crime shall have been committed or, where uncertainty exists as to the county in which the crime was committed, the accused may be tried in any county in which the evidence indicates the crime might have been committed. Provided, that the venue may be changed to some other county of the state, on the application of the accused, in such manner as may be prescribed by law. He shall be informed of the nature and cause of the accusation against him and have a copy thereof, and be confronted with the witnesses against him, and have compulsory process for obtaining witnesses in his behalf. He shall have the right to be heard by himself and counsel, and in capital cases, at least two days before the case is called for trial, he shall be furnished with a list of the witnesses that will be called in chief, to prove the allegations of the indictment or information, together with their post office addresses.

**18.** Amendment VI reads:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

dures involving sentence revocations, the statutes clearly limit the state action to a twenty-day period. Failure to observe this stated time limitation bars revocation. *See McCauley v. State,* 814 P.2d 157 (Okla.Cr. 1991); *Lentz v. State,* 806 P.2d 661 (Okla. Cr.1991). Thus, it is obvious that term and time limitations in matters now before the court can be and are placed upon courts without an incursion upon their inherent power.

**In the Matter of J.M. and J.M., minor children,**