2003 OK CIV APP 66

**Michael H. McCOWN, Plaintiff/Appellee,**

v.

**STATE of Oklahoma, ex rel. DEPARTMENT OF PUBLIC SAFETY, Defendant/Appellant.**

**No. 98,319.**

Court of Civil Appeals of Oklahoma, Division No. 3.

July 1, 2003.

Stephen G. Fabian, Jr., Oklahoma City, OK, for Plaintiff/Appellee.

J. Robert Blakeburn, State of Oklahoma, Department of Public Safety, Oklahoma City, OK, for Defendant/Appellant.

Opinion by KENNETH L. BUETTNER, Judge:

¶ 1 Michael H. McCown was arrested September 8, 2001 for driving under the influence of alcohol. He was given a breath test and, as a result, his driver's license was revoked by the Department of Public Safety (DPS). The revocation was upheld by DPS after an evidentiary administrative hearing. McCown appealed to the District Court of Oklahoma County which set aside the revocation on the ground that the breath test result was not admissible evidence because the apparatus was not approved by the rules of the Board of Tests for Alcohol and Drug Influence (Board). We affirm.

¶ 2 When McCown, a minor, was arrested, the officer tested for alcohol using an Intoxilyzer 5000 connected to a Guth Model 2100 Simulator. It was undisputed that the Simulator was not listed as an approved device pursuant to OAC 40: 25–1–3 where the Board lists its approved devices.

¶ 3 A person who is denied driving privileges or has his driving privileges canceled, denied, suspended, or revoked by DPS may appeal the adverse action to district court which has original jurisdiction to hear the petition. 47 O.S. Supp.2000 § 6–211(A). The district court takes testimony of witnesses and examines the facts and circumstances, including the records of DPS relative to the offense, and the driving record of the person. It makes a determination based

on the facts submitted whether the petitioner is entitled to driving privileges or whether the petitioner should be subject to the DPS order.[1] The person or DPS may appeal the order of the district court. 47 O.S. Supp. 2000 § 6–211(M). The reviewing court "... will not reverse or disturb a finding of a lower court if there is any evidence, or any reasonable inference to be drawn therefrom, which tends to support its findings." *Smith v. State ex rel. Department of Public Safety*, 1984 OK 16, ¶ 7, 680 P.2d 365, 368.

¶ 4 DPS carries the burden of proving, by a preponderance of the evidence, that the adverse action with respect to driving privileges, was proper. *Trenton v. State ex rel. Department of Public Safety*, 1989 OK CIV APP 96, 790 P.2d 1127.

¶ 5 The parties stipulated that the district court take judicial notice of the Oklahoma Administrative Code's Rules of the Board of Tests for Alcohol and Drug Influence.

¶ 6 DPS presented one witness, the arresting officer. He testified that he had been a police officer for the City of Edmond for approximately eight and one-half years. On September 8, 2001 he came in contact with McCown:

A I received a call from a father, Mr. McGown (sic), who was trying to stop his son. I believe at that time they were northbound on Santa Fe. His son was driving a small red vehicle. His son was not stopping for him. They came eastbound on Covell to Broadway, and then came southbound. I was coming northbound on Broadway where I made contact with the red vehicle coming southbound roughly, and I estimated the speed at approximately 60 miles per hour, turned around the vehicle and stopped him.

Q What's the speed limit in that area?

A It's 45 miles per hour right before Danforth, approximately a quarter mile, goes to 35 miles an hour.

Q Okay. So when you saw those vehicles they were coming at you, right?

A Yes, sir.

Q Okay. When you saw that, was the small red vehicle within the city limits of Edmond?

A Yes.

Q Okay. So once you did see these vehicles that you described, what did you do?

A I stopped the red vehicle, approached and made contact with the driver, Michael McGown (sic).

Q And what did you tell him or ask him to do?

A Asked him for his driver's license identification. As I was talking to him I noticed an odor of alcoholic beverage coming from about his person, or about the vehicle, from the vehicle.

Q Was there anyone in the vehicle with him?

A There was a friend in the passenger's seat.

The Court: In the passenger's seat?

A Yes, sir.

Q So at that time could you specifically determine where that odor was coming from?

A Not specifically.

Q Okay. So what did you do when you noticed that odor?

---

1. Driver's license revocation hearings are "special proceedings" limiting the district court to the express provisions of the enabling statute. See *Thomas v. State ex rel. Department of Public Safety*, 1993 OK CIV APP 78, 858 P.2d 113, fn. 10. For this reason, we set forth 74 O.S. Supp. 2000 § 6–211(I): The court shall take testimony and examine the facts and circumstances, including all of the records on file in the office of the Department of Public Safety relative to the offense committed and the driving record of the person, and determine from the facts, circumstances, and records whether or not the petitioner is entitled to driving privileges or shall be subject to the order of denial, cancellation, suspension or revocation issued by the Department. The court may also determine whether or not, from the person's previous driving record, the order was for a longer period of time than such facts and circumstances warranted. In case the court finds that the order was not justified, the court may sustain the appeal, vacate the order of the Department and direct that driving privileges be restored to the petitioner, if otherwise eligible. The court may, in case it determines the order was justified, but that the period of the suspension or revocation was excessive, enter an order modifying the same as provided by law.

A  I had Mr. McGown (sic) exit the vehicle, and we walked to the front of the vehicle.

Q  Okay. And he did so?

A  Yes.

Q  Once you got him to the front of the vehicle, what were you able to determine about that odor: Did it go away, get stronger, weaker, whatever?

A  It appeared to get a little bit weaker. As I was talking to him, as I observed him getting out of the car he seemed a little unsteady on his feet. And then as I was talking to him, asked him if he had anything to drink and he stated to me he had a couple of beers about an hour ago. And then he stated to me, that to be honest, I'm probably a little drunk. It's at that time that I placed him under arrest for DUI.

¶ 7 The officer further testified that he caused a sworn statement of the contact and arrest to be transmitted to DPS. The Affidavit and Notice of Revocation was admitted into evidence. He stated that another officer transported McCown to the station and that after he had the car impounded, he also went to the jail. In the booking room, he read McCown his implied consent test request. He testified that McCown was informed that his license would be revoked or suspended if the results were .02 or greater. McCown consented to the test. The officer checked McCown's mouth for foreign objects and warned him about the fifteen minute deprivation period. The officer did not leave the room during the deprivation period. The officer testified that he used an intoxilyzer 5000D for which he was licensed. He used a memory aid to assist him in the testing procedure. The officer continued in detail about the testing procedures. McCown blew a .03.

¶ 8 McCown did not object to most of the testimony, but objected to the admissibility of the Intoxylizer results because the Simulator was not one approved by the Board. McCown then cross-examined the officer and demurred to the evidence.

¶ 9 The documentary evidence admitted included: (a) municipal court summons for DUI-alcohol; (b) officer's Affidavit and Notice of Revocation (exp. tag, speeding & rolling disturbance, strong odor of an alcoholic beverage, mumbled speech, stated "I think I'm a little drunk") with attached page of McCown's Intoxilyzer analysis; (c) Intoxilyzer Model 5000–D Log of Tests and Maintenance Record; (d) McCown's Driver's License Traffic Record; and (e) a copy of the Board's Approved Alcoholic Breath Simulators list dated December 1, 1999 and an attached copy of the Board's minutes of its November 17, 1999 meeting. 

¶ 10 With respect to the last exhibit, the simulator used during McCown's test is not one approved by the Board. The minutes of the meeting revealed that the Board approved a motion to approve the use of the simulator in question. The district court found that the simulator used did not appear in the Oklahoma Administrative Code as a device approved by the Board of Tests for Drug and Alcohol Influence and therefore the license revocation should be set aside. From the bench, the district court stated that the Board had approved the device but had failed to formalize its approval through the usual rule-making procedures. The law requires that admissibility of the breath test into evidence be based on the test being administered and performed in compliance with the rules and regulations of the Board. 47 O.S. Supp.1992 § 752(H) and 47 O.S. Supp.2000 § 759(B).[2]

---

**2.**  47 O.S. § 752(H): Tests of blood or breath for the purpose of determining the alcohol concentration thereof, and tests of blood, saliva or urine for the purpose of determining the presence and concentration of any other intoxicating substance therein, under the provisions of this title, whether administered by or at the direction of a law enforcement officer or administered independently, at the option of the tested person, on the excess specimen of such person's blood, breath, saliva or urine, to be considered valid and admissible in evidence under the provisions of this

title, shall have been administered or performed in accordance with the rules and regulations of the Board.

47 O.S § 759(B): Collection and analysis of a person's blood, breath, saliva or urine, to be considered valid and admissible in evidence, whether performed by or at the direction of a law enforcement officer or at the request of the tested person, shall have been performed in compliance with the rules and regulations adopted by the Board of Tests for Alcohol and Drug Influ-

¶ 11 DPS first contends that the district court exceeded its authority because it did not find that the test was inaccurate and that the statute limits it to methodology of the tests. We agree that the hearing in the district court is a special proceeding and confined to the express authority found in the law. However, the law is clear that the district court makes a determination on the admissibility of the test result based on compliance with the Board's rules. The Board formally publishes its list of approved devices. Because devices are approved by the Board and published in its rules, merely approving new devices in meeting minutes is insufficient to identify new devices approved by the Board. There is no error on this account.

¶ 12 Next, DPS argues that the district court erred by holding that the Board must promulgate a rule to change procedure or approve new equipment. The Board is subject to the rule-making requirements of the Oklahoma Administrative Procedures Act, 75 O.S. Supp.1997 § 250 et seq. The Board publishes its list of approved devices in the OAC. Adding a device to the approved list would amend the list. There is a procedure for amending rules which includes publication of the amended action in the Oklahoma Register. See 75 O.S. Supp. 1994 § 303 for detailed procedures for adopting, amending, or revoking rules. Because the new simulator device had not been approved and incorporated into the Board's rules, the test results were inadmissible.[3]

¶ 13 Finally, DPS claims that the district court erroneously allowed a driver's license appeal to become an improper venue challenging the rule making procedures of the Board of Tests for Alcohol and Drug Influence. We disagree. The determination of the admissibility of the breath test result was expressly given to the trial court in its role in driver's license appeals. Admissibility of test results is based on the test being in compliance with the Board's rules. The Board had no rule authorizing the use of the Guth Model 2100 Simulator, therefore the test result was inadmissible.[4]

¶ 14 AFFIRMED.

ADAMS, P.J., and JOPLIN, C.J., concur.

---

ence and by an individual possessing a valid permit issued by the Board for this purpose.

3. We express no opinion on whether approved devices must be the subject of Board Rules. We only hold that when the Board decided to list approved devices in its rules, that adding to that list must be by Rule amendment.

4. Another division of the Oklahoma Court of Civil Appeals has reached a similar result in *Manning v. State of Oklahoma,* 2003 OK CIV APP 57, 71 P.3d 527 (cert.denied) (74 OBJ 1872).